IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| GREGORY GOULD,       )<br>        Plaintiff,      )<br>                              )<br>vs.                           )<br>                              )<br>JEFFREY BEARD, et al,  )<br>        Defendants.   ) | <br><br><br>C.A. No. 07-55Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment [Document # 91] be granted. The Clerk of Courts should be directed to close this case.


**II.   REPORT**

   **A.    Relevant Procedural History**

On March 27, 2007, Plaintiff, who is currently incarcerated within the State Correctional System, originally filed this civil rights action against Defendants Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections; Superintendent Wilson of SCI-Fayette; Captain Manchas of SCI-Fayette; Lt. Kremposky of SCI-Fayette; Correctional Officer Woods of SCI-Fayette; Superintendent Sobina formerly of SCI-Forest; and Ulli Klemm, Chair of the Department of Corrections Chaplaincy Department[1]. Plaintiff alleged that these Defendants violated his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well as his constitutional rights under the First, Eighth, and Fourteenth

---

[1] Ulli Klemm was substituted for original Defendant Father Menei in this action. See Document # 21 and text order dated December 18, 2008.

1

Amendments. In the original complaint, Plaintiff sought various compensatory and injunctive relief.

Much unusual procedural history has followed in this case, with the introduction of claims of retaliation and access to courts after the filing of the original complaint. However, the only claims that currently remain pending are the RLUIPA claims articulated in the Original Complaint. All constitutional claims have previously been dismissed from this action. The only remaining Defendants are Beard, the Secretary of the Department of Corrections; Wilson, former Superintendent of SCI-Fayette, Sobina, former Superintendent of SCI-Forest; and Klemm, the Administrator for Religion and Volunteer Services for Pennsylvania Department of Corrections.

In his Original Complaint, Plaintiff claims that his statutory rights have been violated because prison officials at SCI-Forest and SCI-Fayette have rejected his requests for separate religious services and a December fast for Nation of Islam ("NOI") members. In April of 2004, while he was incarcerated at SCI-Fayette, Plaintiff claims that he and two other NOI members filed religious accommodation forms (on behalf of over 40 like-minded NOI members) seeking the opportunity to fast in December. Document # 4, page 4. The accommodations were denied by the Department of Corrections and

> "we were told that we had to either worship with the orthodox Muslims or fast in (sic) our own in our cell with no assistance from the Department of Corrections. NOI members fasting in their cell was a burden that could not be overcame (sic) because most NOI members did not have the funds to pay for morning before the sun up and night meals, and it is against Department of Corrections policy to take food from the kitchen back to an inmates cell, so we were unable to fast as a group."

Id.

In September of 2004, Plaintiff sought NOI weekly religious services through the religious accommodation request forms. Id. This request was denied. Id. at 5.

In April of 2005, Plaintiff was transferred to SCI-Forest, where he is presently still incarcerated. Id. at 7. Upon his arrival, Plaintiff was "informed ... that SCI-Forest was just newly opened, and that they would need a little time before they started NOI services." Id. Plaintiff alleges that in September of 2006, seventeen months later, he and other NOI members

filed religious accommodation forms seeking the opportunity to observe the December fast, and in October of 2006, filed religious accommodation forms seeking a weekly religious service.  Id. at 8.  Those requests were denied.

The record before this Court reflects that Plaintiff is free to practice his religious beliefs privately, by meeting with a personal spiritual advisor one-on-one in a visiting room (document # 92-2, McQuown Declaration, ¶ 23; document # 92-3, Klemm Declaration, ¶ 21), by praying in his cell (id.), and by reading religious materials (document # 92-3, ¶ 21).  Plaintiff admits that he is permitted to keep numerous religious materials in his cell (document # 92-2, Deposition of Plaintiff, pages 16-18) and that he is permitted to self-fast during the month of December (id. at pages 11-15).

Plaintiff seeks injunctive relief in the form of NOI worship services and a December fast.[2]  According to the complaint, Plaintiff seeks:

> that this Court order the Department of Corrections and its officers afford that members of the NOI, the same rights and privileges they afford the other religious groups, that we the NOI members be allowed to practice our religion as taught by our Messenger and Prophet the Hon. Elijah Muhammad!  And that we not be forced to practice others religious customs in place of our own. [...] We pray this Court order that we for this suite (sic) purposes the Plaintiff not be forced to worship as Sunni Muslim.  I pray that this Honorable court order that Plaintiff be allowed to contact and have religious coordinators.  That this Court order that we be allowed to conduct inmate-lead (SCI) religious services until we obtain outside staff to come in as our Religious Coordinator, as prescribed/allowed by Department of Corrections policy, the same policy and procedure the Department of Corrections allowed to be conducted by the Orthodox Muslims here at SCI-Forest in early 2005 while their present Imman was in school.  The Plaintiff requests that this Honorable court order that we the NOI members be afforded the right to separate religious services from the Sunni Muslims in these newer and smaller institutions, the same separate services given to NOI members in SCI Dallas, Graterford, Albion, etc.  the Plaintiff requests that this court order that all federal funding be withheld from the Pennsylvania Department of Corrections until they comply with [...] RLUIPA.
>
> * * *
>
> The Plaintiff requests that he and other NOI members in these newer institutions

---

[2] Plaintiff also seeks declaratory relief in that he requests that this Court declare that the past acts of Defendants violated his statutory rights.  However, the Eleventh Amendment forbids "judgments against state officers declaring that they violated federal law in the past."  Santiago v. Sherman, 2007 WL 217353, at * 3 (W.D. Pa.).

> be allowed to worship and follow his Messenger, His God, and Culture, like all other religious groups and other NOI members in older institutions in the state, and that federal funding be cut off until the Department of Corrections complies with that Order.

Document # 4, pages 10, 14.  See also Document # 92-2, Deposition of Plaintiff, page 13.

Presently pending before this Court is the motion for summary judgment filed by Defendants as to the RLUIPA claim.  Document # 91.  Plaintiff has filed a brief in opposition to the pending motion.  Document # 103.  Defendants have filed a reply brief.  Document # 105.  The issues are fully briefed and are ripe for disposition by this Court.

### B.    Standards of Review

#### 1.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**2.     Motion for summary judgment**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### C. The Merits of Plaintiff's RLUIPA Claims

"RLUIPA [...] protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).  RLUIPA provides, in relevant part, that no prison that receives federal funding shall impose a substantial burden on the religious exercise of a person confined to the prison even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-1.[3]

In order to establish a *prima facie* case, a plaintiff must "demonstrate"[4] that his "exercise

---

[3] In 1993, the Religious Freedom Restoration Act was enacted by Congress and, the Religious Land Use and Institutionalized Persons Act was enacted as a replacement to the RFRA in 2000. The provisions of the RLUIPA are "nearly identical" to the provisions of the RFRA.  Norwood v. Strada, 249 Fed.Appx. 269, at *2 (3d Cir. 2007).

[4] "Demonstrate" is defined by the statute as "meet[ing] the burdens of going forward with the evidence and or persuasion." 42 U.S.C. § 2000cc-5(2).

of religion"[5] was "substantially burdened."  Id.  "The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007). See also Washington v. Klem, 497 F.3d 272, 283 (3d Cir. 2007); 42 U.S.C. 2000cc.

The United States Court of Appeals for the Third Circuit has held that a "substantial burden" lies where:

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR
>
> 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

Washington, 497 F.3d at 280 and n7[6] (capitalization in original) adopting the definition of "substantial burden" enunciated by the Fifth Circuit in Adkins v. Kaspar, 393 F.3d 559 (5th Cir. 2004).  See also Heleva v. Kramer, 330 Fed. Appx. 406, 409 (3d Cir. 2009).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling

---

[5]  "Religious exercise" is defined by the statute as including "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. 2000cc-7(a). The courts are barred from inquiring "into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13  (2005). See also Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004) ("we are satisfied [that] the position we adopt today is faithful to both the text of the RLUIPA and Supreme Court precedent.  Declining to inquire into whether a practice is central to an adherent's religion avoids the greater harm [...] of having courts presume to determine the place of a particular belief in a religion.").

[6]  In Washington, the Third Circuit held that the Department of Corrections' ten-book limitation in a prisoner's cell constituted a substantial burden which impeded Mr. Washington from exercising his self-founded religion of the "Children of the Sun Church" which required him to read a certain type and number of books per day. 497 F.3d at 281 (opinion authored by J. Brooks Smith).

7

governmental interest." 42 U.S.C. § 2000cc-1.[7] "When considering the government's burden, we owe due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Smith v. Kyler, 295 Fed.Appx. 479, 484 (3d Cir. 2008) citing Cutter, 544 U.S. at 722.

Here, Plaintiff has not met his burden on either of his claims under RLUIPA, and so the burden has not shifted to Defendants.

### 1) The December Fast

Defendants argue that Plaintiff has failed to state a *prima facie* case as to the December fasting issue as "Plaintiff has admitted that he is able to exercise his personal belief that he should fast during December by attending breakfast, skipping lunch, and then eating soup in his cell after sunset" and has admitted "that he has not been prevented from participating in a December fast." Document # 94.

According to Defendant Ulrich Klemm, the Administrator for Religion and Volunteer Services for the Pennsylvania Department of Corrections, some NOI members wish to fast during the calendar month of December in addition to fasting during Ramadan. Document # 92-3, Declaration of Ulrich Klemm, ¶ 27. NOI inmates are permitted to self-fast privately during December. Id. However, the Department of Corrections does not make any special accommodations for those inmates - with the exception of those institutions whereby NOI

---

[7] A sister circuit court has characterized RLUIPA claims as consisting of four elements, with a shifting burden of proof: "Plaintiff has the burden of proving both that his religious exercise has been burdened, and that the burden is substantial. The burden then shifts to the government to show both that the burden furthers a compelling governmental interest, and that the burden is the least restrictive means of achieving that compelling interest." See Logan v. Lockett, 2009 WL 799749, at *3 (W.D. Pa. March 25, 2009) (M.J. Bissoon) and Sharp v. Johnson, 2008 WL 941686, at *21 (W.D. Pa.) (M.J. Hay), both quoting Spratt v. Rhode Island Dept. Of Corrections, 482 F.3d 33 (1st Cir. 2007).

inmates have had a long-standing tradition of observing the December fast. Id.

Plaintiff has not provided any evidence to the contrary on this specific issue. Indeed, Plaintiff's own deposition testimony supports the granting of summary judgment on this issue. In his deposition, Plaintiff admitted that during the month of December, breakfast is served before sunrise (document # 92-2, deposition of Plaintiff, pages 11-12), he skips lunch, and eats soup in his cell after the sun goes down around 6:00 or 6:30 (id. at pages 12, 14, 15). Plaintiff has not shown that the Department of Corrections' failure to provide a December fast has imposed a substantial burden on his religious exercise. While engaging in a December fast may be a precept of Plaintiff's NOI religious beliefs (a supposition that Defendants dispute[8]), Plaintiff was not required to forfeit any benefits otherwise generally available to other inmates, nor was Plaintiff pressured to modify his religious behavior or beliefs. Accordingly, this Court finds that Plaintiff's religious exercise in this regard is not being substantially burdened as he is permitted to follow the precepts of his religion. The motion for summary judgment should be granted as to the December fasting.

### 2) Separate Worship Services

Here, it is Plaintiff's burden to show that the practice of his "religious exercise" is substantially burdened by the Department of Corrections' denial of routine communal worship with like-minded individuals. There is precedent within this Circuit indicating that the denial of opportunities for such communal worship **may** constitute a substantial burden. See Small v.

---

[8] Although the parties disagree over whether NOI members are required to observe a December fast, this dispute does not create a material issue of fact sufficient to defeat a motion for summary judgment as the resolution of this issue does not affect the outcome of this case. For purposes of this discussion only, this Court takes the position that Plaintiff believes that the December fast is required by NOI.

Lehman, 98 F.3d 762 (3d Cir.1996) (applying RFRA standard to Sunni Muslims).[9]  However, this is not always the case.  In Smith v. Kyler, 2008 WL 4516695 (3d Cir.), an inmate sought the ability to congregate with like-minded Rastafarians, and claimed that the Department of Corrections' failure to provide such an opportunity for congregational worship imposed a substantial burden on his religious exercise.  Applying the substantial burden test of Washington, the Third Circuit concluded that "Smith had not been denied a benefit because of his religious beliefs, nor has he been forced to modify his behavior." Id. at * 4.

To review, the substantial burden test requires that Plaintiff demonstrate that he has been "forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR [that] the government [has] put substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Washington, 497 F.3d at 280.  As in Smith, Plaintiff has not met this burden.  Although Plaintiff wishes to worship together with other NOI members, he has not shown abandonment of a precept to receive a benefit.  Moreover, although Plaintiff has been permitted and encouraged to worship with Orthodox Muslims, he has not been compelled to "modify his religious behavior or beliefs." Id.

The substantial burden test, as articulated in Washington and as applied in Smith, has not been met by Plaintiff.  Accordingly, summary judgment should be granted in favor of Defendants on this issue.

---

[9] In Small, the Third Circuit was applying the RFRA, the precursor to the current and more expansive RLUIPA.  Although Small has been overruled in part by City of Boerne v. Flores, 521 U.S. 507 (1997) (striking down RFRA as unconstitutional), the holding that the denial of the opportunity for congregational worship **may** constitute a substantial burden on one's religious exercise continues to be the law within this Circuit.  See Logan v. Lockett, 2009 WL 799749, at *5 (W.D. Pa. March 25, 2009).

### III. CONCLUSION[10]

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment [Document # 91] be granted. The Clerk of Courts should be directed to close this case.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. No extensions of time will be granted. Failure to file timely objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

            S/Susan Paradise Baxter
            SUSAN PARADISE BAXTER
            UNITED STATES MAGISTRATE JUDGE

Dated: January 16, 2010

---

[10] Because Plaintiff has not demonstrated a substantial burden on his religious exercise as to either of his claims, the burden of proof does not shift to Defendants. Therefore, the Court need not review Defendants' arguments regarding whether a compelling governmental interest is being furthered by the least restrictive means. Washington, 497 F.3d at 278, 283.